**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | **CRIMINAL NO. 1:04-CR-103-03** |
| **v.** | : | |
| | : | **(Chief Judge Kane)** |
| **HECTOR TOLEDO, JR.,** | : | |
|      **Petitioner** | : | |

<u>**MEMORANDUM**</u>

Before the Court is Petitioner Hector Toledo, Jr.'s <u>pro se</u> motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.  (Doc. No. 819.)  After the Court provided Petitioner with an administrative notice related to successive petitions, <u>see</u> <u>United States v. Miller</u>, 197 F.3d 644 (3d Cir. 1999); <u>see also</u> <u>Adams v. United States</u>, 155 F.3d 582 (2d Cir. 1998), Petitioner elected to proceed with the motion as filed.  (Doc. Nos. 821 & 822.)  His motion and memorandum in support thereof were then served upon the Government, which filed a timely brief in opposition.  (Doc. No. 832.)  Thereafter, Petitioner filed a traverse to the Government's brief.  (Doc. No. 837.)  Thus, the motion is fully briefed and ripe for disposition. Upon due consideration of Petitioner's arguments and the Government's response thereto, the Court finds that Petitioner is not entitled to § 2255 relief and will deny the motion.

**I.     BACKGROUND**

On March 17, 2007, a grand jury in the Middle District of Pennsylvania returned an indictment against Petitioner Hector Toledo, Jr., and twelve codefendants, alleging various violations of federal controlled substances laws.  Pursuant to a plea agreement, Petitioner pleaded guilty to one count of conspiracy to distribute a controlled substance, in violation of 21 U.S.C. § 841(b)(1)(C), for his role as one of the leaders of "T.N.U.," a loosely organized street gang that traveled to New York City to obtain heroin for sale in central Pennsylvania.  (Doc. No.

821, at 2.)  The three remaining counts brought against Petitioner were dismissed by the Government.

Following Petitioner's guilty plea, the probation office conducted a presentence investigation and issued a presentence report ("PSR") that calculated the applicable guideline range in Petitioner's case to be 360 months to life, based on an offense level of 42 and a criminal history score of VI.  The plea agreement negotiated by defense counsel, however, capped Petitioner's possible sentence at 240 months, the statutory maximum penalty for conspiracy to distribute and possession with intent to distribute under 21 U.S.C. § 841(b) (PSR at 1, ¶¶ 87-88.)

Defense counsel submitted a sentencing memorandum on Petitioner's behalf presenting arguments related to the quantity of drugs, the extent of any leadership role enhancement, the use of a juvenile enhancement, and the PSR's failure to credit Petitioner with acceptance of responsibility for his actions.  (Doc. No. 731.)  Defense counsel further argued that Petitioner's criminal history category of VI overstated the true nature of his criminal history.  (Id. at 5.)  In the sentencing memorandum, defense counsel also presented the Court with "other factors to consider when imposing the sentence guidelines," including the following:

- Toledo's parents raised him in a lifestyle of drug use and abuse;

- Toledo observed, from an early age, his parents using and abusing drugs;

- As a juvenile, Toledo was placed in a wilderness school and boot camp facility;

- Toledo's father was incarcerated Toledo was very young;

- Toledo lived on the on the streets with his mother, who continued abusing drugs, during the time of his father's incarceration;

- After Toledo's father was released from prison, Toledo began living with him. (Toledo's father became clean while in prison and has remained drug free since his release.);

2

- Toledo has three children, ages three, two, and almost one year;

- The mother of Toledo's children, Lidia Reyes, was sentenced to 135 months of imprisonment on charges stemming from the same underlying circumstances as Toledo's conviction;

- Toledo abused drugs since 1995;

- Toledo has never been through a drug rehabilitation program;

- Toledo hopes to rehabilitate himself while in prison so as to be a good father to his three children upon release.

(Id. at 5-6.)

During the sentencing hearing, defense counsel briefly restated his client's positions on the objections to the PSR that were set forth in the sentencing memorandum. (Sentencing Tr. at 2-6) (addressing the quantity of drugs, the limited extent of Toledo's leadership role, the "use of a juvenile" enhancement, acceptance of responsibility, and that a category VI classification overstates Toledo's criminal history). Petitioner likewise offered testimony at his sentencing, apologizing for the harm his behavior had caused and explaining that many of his actions were the result of his drug addiction. (Tr. at 7.) He informed the Court that his two daughters were being raised by his mother, who had been diagnosed with a life-threatening disease. (Id. at 7.) Petitioner expressed his desire to be released before his mother passed away because of her medical condition, which would leave his father as the caregiver to all three of Petitioner's children pending his release. (Id. at 7.)

After hearing from Petitioner and the Government, the Court determined that application of the sentencing guidelines would yield an offense level of 33 and a criminal history category of VI. (Id. at 10-11.) The Court determined based on all of the circumstances that Petitioner was entitled to a departure downward, and sentenced Petitioner as though he were a criminal history

category V, which yielded a range of 210 to 263 months.  (Id. at 11.)  Based on all of the

circumstances presented, the Court determined that a sentence at the bottom of the guidelines

was appropriate.  (Id.)  Accordingly, the Court sentenced Petitioner to 210 months, followed by

three years of supervised release, and appropriate fines and assessments.  (Id.)  The Court also

recommended that the Bureau of Prisons designate Petitioner for a facility near his family and

evaluate him for participation in a drug and alcohol program.  (Doc. No.734-2, at 2.)

By way of the § 2255 motion now before the Court, Petitioner asserts that he is entitled to

relief because "his sentence was secured and imposed in violation of his Sixth Amendment[]

Constitutional right to effective assistance of counsel."  (Doc. No. 821.)  Specifically, Petitioner

asserts that defense counsel was ineffective because he failed to investigate, present, and

adequately argue various mitigating factors regarding Petitioner's traumatic childhood and his

family obligations to his three children.  (Id.)

## II.    LEGAL STANDARD

Under 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set

aside, or correct the prisoner's sentence.  28 U.S.C. § 2255.  However, § 2255 does not afford a

remedy for all errors that may have been made at trial or sentencing.  United States v. Essig, 10

F.3d 968, 977 n.25 (3d Cir. 1993).  "The alleged error must raise 'a fundamental defect which

inherently results in a complete miscarriage of justice.'"  Id. (quoting United States v. Hill, 368

U.S. 424, 428 (1962)).  Furthermore, § 2255 generally limits a federal prisoner's ability to attack

the validity of his sentence to cure jurisdictional errors and errors which rose to the level of a

constitutional violation.  United States v. Timmreck, 441 U.S. 780, 783-84 (1979).

Morever, the decision whether to hold a hearing when a prisoner moves to vacate a

judgment under § 2255 is left to the sound discretion of the district court.  <u>Virgin Islands v.</u>

<u>Forte</u>, 865 F.2d 59, 62 (3d Cir. 1989).  Where the record affirmatively indicates that a

petitioner's claim for relief is without merit, the claim may be decided on the record without a

hearing.  <u>See Virgin Islands v. Nicholas</u>, 759 F.2d 1073, 1075 (3d Cir. 1985); <u>Page v. United</u>

<u>States</u>, 462 F.2d 932, 933 (3d Cir. 1972).  Thus, if the record, supplemented by the trial judge's

personal knowledge, conclusively negates the factual predicates asserted in support of a § 2255

motion, or if the movant would not be entitled to relief as a matter of law even if the factual

predicates as alleged in the motion are true, it is not an abuse of discretion to elect not to conduct

an evidentiary hearing.  <u>See</u> <u>Nicholas</u>, 759 F.2d at 1075.  "[B]ald assertions and conclusory

allegations do not afford a sufficient ground for an evidentiary hearing."  <u>Mayberry v. Petsock</u>,

821 F.2d 179, 185 (3d Cir. 1987).

## III.   DISCUSSION

A party claiming ineffective assistance must identify specific errors by counsel.  <u>Stevens</u>

<u>v. Delaware Correctional Center</u>, 295 F.3d 361, 370 (3d Cir. 2002).  Here, Petitioner claims that

defense counsel provided constitutionally ineffective representation because he failed to contact

Petitioner's parents to investigate possible mitigating factors and because he did not call

Petitioner's parents as witnesses during the sentencing hearing.  Petitioner contends that "even

the most cursory investigation would have revealed that Toledo's mother who is the primary

caretaker of Toledo's daughters has full blown AIDS and that she has been living with the

disease for years; and that Lidia Reyes, the children's mother, who is also incarcerated, is facing

deportation." (Doc. No. 821, at 6.)  Furthermore, Petitioner complains that defense counsel was

ineffective for failing to "follow-up on mitigating arguments at his sentencing hearing."  (<u>Id.</u> at

5.)  Petitioner contends that his traumatic childhood and family obligations militate in favor of a

downward departure or non-guideline sentence, and that the outcome of the sentencing may

reasonably have been different had counsel argued for further adjustment on these bases.  (Id. at

5-7.)

Claims for ineffective assistance of counsel are governed by Strickland v. Washington,

466 U.S. 668 (1984).  Under the Strickland test, to prevail on an ineffective assistance claim, a

party "must demonstrate (1) that counsel's performance was deficient, that is, it fell below an

objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced his

client."  Albrecht v. Horn, 485 F.3d 103, 127 (3d Cir. 2007) (citing Strickland, 466 U.S. at 698-

92).

Judicial scrutiny of the first prong of Strickland – whether counsel's performance fell

below an objective standard of reasonableness – is "highly deferential."[1]  Affinito v. Hendricks,

366 F.3d 252, 258 (3d Cir. 2004).  The Court "must indulge a strong presumption that counsel's

conduct falls within the wide range of reasonable professional assistance."  Strickland, 466 US.

at 689.  The Court examines a decision by counsel not to investigate to assess its "reasonableness

---

[1]  As the Court in Strickland observed:

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

Strickland, 466 US. at 689 (internal citation omitted).

in all of the circumstances." <u>Stevens v. Delaware Correctional Center</u>, 295 F.3d 361, 370 (3d

Cir. 2002) (quoting <u>Strickland</u>, 488 U.S. at 691).  Although counsel has a duty to investigate,

counsel may reasonably decide that certain investigation is unnecessary: "For example, when the

facts that support a certain potential line of defense are generally known to counsel because of

what the defendant has said, the need for further investigation may be considerably diminished

or eliminated altogether." <u>Strickland</u>, 488 U.S. at 691; <u>see also</u> <u>Stevens</u>, 295 F.3d at 370-71.

In his memorandum and affidavit in support of his motion, Petitioner details at length the

information that he provided to defense counsel regarding his troubled childhood and the

circumstances surrounding his parents and their care of his three young children.  (Doc. No.

822.)  Petitioner explains that he told defense counsel about: his parents' drug abuse; his father's

arrest; living with mother on the street; observing his mother do drugs; being a drug addict by his

pre-teen years; his introduction into criminal life; his mother's battle with AIDS; his various

placements in juvenile facilities; and his never having the opportunity to participate in any

rehabilitation, counseling, or mental-health program.  (<u>Id.</u>); (<u>see also</u> PSR ¶¶ 73-86) (presenting

information about, <u>inter alia</u>, Petitioner's family background and history of substance abuse).

Although Petitioner complains that defense counsel should have contacted Petitioner's parents

and Ms. Reyes, he does not specify what information *then unknown to defense counsel* would

have been uncovered by this additional investigation.[2]  Indeed, in light of the detailed

---

[2]  In his memorandum in support of his motion, Petitioner contends that "even the most
cursory investigation would have revealed that Toledo's mother who is the primary caretaker of
Toledo's daughters has full blown AIDS and that she has been living with the disease for years;
and that Lidia Reyes, the children's mother, who is also incarcerated, is facing deportation."
(Doc. No. 821, at 6.)  However, Petitioner acknowledges in his affidavit that he had already
disclosed this information to his attorney "during the plea negotiations and prior to sentencing."
(Doc. No. 882.)

information Petitioner provided to his attorney, and Petitioner's inability to point to any new

relevant information such investigation would have uncovered, the decision by defense counsel

not to conduct the additional investigation was reasonable under the circumstances.

Insofar as Petitioner argues that defense counsel erred by failing to adequately argue his

traumatic childhood and family obligations during sentencing, it is clear that counsel made a

strategic decision to present this information in the sentencing memorandum without

overemphasizing it during the hearing, such as by calling Petitioner's parents to testify.  See

Strickland, 466 U.S. at 690 (stating that "strategic choices made after thorough investigation of

the law and facts relevant to plausible options are virtually unchallengable"); see also United

States v. McCoy, 410 F.3d 124, 135 (3d Cir. 2005) (noting that, although a reasonableness

inquiry still applies, courts have been highly deferential to counsel's strategic decisions).  In

their response, the Government explains that it discussed with defense counsel on numerous

occasions defense counsel's belief that Petitioner was entitled to a downward departure based,

among other things, on Petitioner's difficult childhood and family circumstances.  (Doc. 832, at

4.)  During these conversations, government counsel explained to defense counsel that they were

opposed to a departure based upon his childhood and family circumstances:

> We explained that our opposition would include highlighting the
> circumstances surrounding the petitioner and the mother of his three
> children (Lidia Reyes) dealing drugs with the children present and
> making deliveries of drugs with the children in the car.  I further
> explained [the Government's position] that the defendant's current
> family circumstances were of his own creation after many times
> being in the judicial system and even a significant departure was not
> going to allow him to take care of his children considering the
> seriousness of the charges and where his advisory guidelines started.
> Furthermore, I explained that if the defense pursued such an
> argument, I would be forced to call witnesses supporting our position
> that the petitioner's conduct endangered his children and that they

8

would be safer and better off without him.

(Id. at 3-4.)  Here, defense counsel skillfully negotiated with the Government and obtained their agreement that Petitioner could present his childhood and family circumstances in connection with Petitioner's argument that his criminal history was overstated *without* provoking the Government to introduce damaging testimony and arguments that Petitioner created his current plight, was likely to offend again, and posed a danger his children's physical, mental, and emotional well-being through his criminal lifestyle.  (Id. at 3-4.)  Defense counsel's tactical decision to present information about Petitioner's childhood and family situation while avoiding the Government's presentation of additional aggravating circumstances to the Court was certainly not, as Petitioner claims, objectively ineffective.

Thus, in relying upon the detailed information provided by Petitioner regarding his childhood and family situation, and in presenting this information to the Court in a manner calculated not to draw the Government's opposition, defense counsel did not commit any error, much less an error so serious that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms.  Accordingly, Petitioner's claim that his counsel was ineffective within the meaning of Strickland fails as a matter of law, and the Court need not consider Strickland's second prong – namely, to examine whether counsel's errors were so serious as to have prejudiced Petitioner.

Even were the Court required to consider the second prong, however, it is clear that Petitioner suffered no prejudice as a result of defense counsel's conduct.  Contrary to Petitioner's argument, the basic information that he contends warranted a lower sentence was, in fact, presented to the Court by way of the PSR, defense counsel's sentencing memorandum, and

Petitioner's testimony on his own behalf at sentencing.  The Court acknowledges that Petitioner's more recent filings provide greater detail about his childhood observations of his parent's drug addiction and clarify certain information that had been presented to the Court.[3] Nevertheless, because the Court had already been made aware of this general information, and considered it and all other relevant circumstances when imposing sentence, Petitioner cannot establish that, "but for counsel's error, there was a reasonable probability that the outcome of the proceeding would have been different, and, thus, that confidence in the outcome is undermined." Albrecht v. Horn, 485 F.3d 103, 128 (3d Cir. 2007).

## IV.   CONCLUSION

Petitioner claims that certain mitigating factors were neither properly investigated by his defense counsel nor adequately argued during his sentencing hearing.  A review of the record, Petitioner's arguments, and the Government's response thereto demonstrates that Petitioner's contentions are without merit.  As the Government explained, defense counsel "was not ineffective, but was highly successful in first limiting the defendant's exposure through a favorable plea agreement, achieving a favorable result on objections to the pretrial services report (drug quantity, role in the offence, anc acceptance of responsibility), and ultimately convincing the United States to not oppose a downward departure, and getting the district court

---

[3]  For example, in the materials supporting his § 2255 motion, Petitioner explains that he has been a heroin and cocaine addict since age 12, or since 1994, whereas the sentencing memorandum states that Petitioner "has abused drugs since 1995."  Additionally, it is now clear that the "life-threatening illness" mentioned by Petitioner during the sentencing hearing was a reference to his mother's ongoing battle with AIDS.  Finally, the Court was aware that Ms. Reyes is Dominican and the mother to Petitioner's children and was aware of her 135 month sentence, having been the Court that imposed it; Petitioner's recent submissions add that Ms. Reyes is facing removal from the United States to the Dominican Republic.

to grant a downward departure resulting in a below-guideline sentence."  (Doc. No. 832, at 7).

With the foregoing in mind, Petitioner's claim of ineffective assistance of counsel must be

rejected.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | **CRIMINAL NO. 1:04-CR-103-03** |
| **v.** | : | |
| | : | **(Chief Judge Kane)** |
| **HECTOR TOLEDO, JR.,** | : | |
| Petitioner | : | |

## <u>ORDER</u>

AND NOW, this 10th day of January, 2008, upon due consideration of Petitioner's

motion, the Government's response thereto, and the record before the Court, **IT IS HEREBY**

**ORDERED THAT** Petitioner's 28 U.S.C. § 2255 motion to vacate, set aside, or correct

sentence (Doc. No. 819) is **DENIED**.  The Clerk of Court is directed to close the file.


s/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania